The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and arguments on appeal. Defendant, by its assignments of error, has not shown good ground to reconsider the evidence, receive further evidence, or amend the Opinion and Award. Plaintiff, however has shown good ground to reconsider the evidence. Having reconsidered the evidence the Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * *
All objections raised during the depositions taken in this case are ruled upon in accordance with the law and this Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Form 21 Agreement for Compensation, approved by the Industrial Commission on 12 September 1989, in the Form 26 Agreements, approved on 7 August 1990 and 18 December 1991, in the Pre-Trial Agreement filed on 14 March 1994, and in the Pre-Trial Stipulations filed on 22 March 1994, as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and an employment relationship existed between the parties on 4 July 1989.
2. Defendant was self-insured on 4 July 1989 with American Motorists Insurance Company as the administering agent.
3. Plaintiff sustained an admittedly compensable injury to his back on 4 July 1989 while assisting a wheelchair bound airline passenger to transfer into the airplane seat.
4. At the time of the admittedly compensable injury, plaintiff's average weekly wage was $596.25, which yields a compensation rate of $376.00.
5. The parties entered into a Form 21 Agreement and subsequent Form 26 Agreements for compensation pursuant to which the plaintiff was paid temporary total disability benefits from 5 July 1989 to 24 September 1989; 26 February 1990 to 24 March 1990; and 3 March 1991 to 4 December 1993, for a total of $50,222.84 in benefits.
6. For the periods of 20 July 1989 to 24 September 1989 and 3 February 1991 to 2 March 1991, plaintiff's benefits were paid directly by U.S. Air as salary continuation.
7. The parties stipulated (43) pages of medical reports into evidence at the hearing; and following the hearing, an additional (24) pages of reports were stipulated into evidence.
8. The issues for determination are:
 (a) Whether plaintiff is entitled to additional temporary total disability benefits after 4 December 1993;
 (b) Whether plaintiff is entitled to permanent partial disability benefits;
 (c) Whether plaintiff unjustifiably refused suitable employment;
 (d) Whether the Form 24 Application to Stop Payment of Compensation was properly approved on 29 November 1993; and
 (e) Whether plaintiff has unjustifiably refused to cooperate with vocational rehabilitation efforts.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a 55 year old male who had obtained a G.E.D. Plaintiff had been employed since 1981 for defendant as a station agent where his duties involved performing customer service activities, helping passengers board and depart airplanes, using a computer terminal to handle ticket information, using a radio and telephone to assist passengers and staff, occasionally lifting baggage and passengers.
2. Plaintiff had prior experience in the U.S. Navy, during which he worked with explosives and torpedoes. Plaintiff worked as a service station attendant, a lumber company worker, electrical and maintenance worker, and has been self-employed in machine repair. He obtained a cosmetology license and eventually operated a chain of beauty salons in Florida and North Carolina.
3. Plaintiff was treated by orthopedic surgeon Dr. Bruce Darden of Charlotte Orthopedic Specialists, beginning 22 August 1989. A CT scan indicated a mild to moderate disc herniation at L4-5 on the left. From 1989 until early 1991, conservative therapy and treatment was pursued. On 18 February 1991 a CT scan showed a herniated disc at L5-S1 with compression of a nerve root.
4. On 6 March 1991, Dr. Darden performed a hemilaminectomy and discectomy at L5-S1 which revealed the disc rupture to be very large. Despite the procedure, following surgery plaintiff's pain grew worse. Thereafter, plaintiff was referred for physical therapy.
5. On 21 June 1991, a follow-up CT scan showed possible shallow left side recurrent herniated disc with annular bulges at L3-4 and L4-5, which reflected disc degeneration. The presence of scar tissue was also detected.
6. Dr. Darden released plaintiff on 17 December 1991, gave him a (17.5) percent permanent partial impairment rating to his back and recommended light duty employment. Dr. Darden continued to see plaintiff occasionally on follow-up visits through his last examination on 3 May 1993.
7. On 11 September 1991 plaintiff sought a second opinion by neurosurgeon Dr. Frederick Finger. Plaintiff presented complaints of continuing back pain and bilateral leg pain with numbness in the left and right legs radiating to the ankles. Dr. Finger reviewed a CT scan and diagnosed plaintiff with postoperative epidural fibrosis (scarring) at the operative site but was not convinced that plaintiff had a disc herniation.
8. On 30 June 1992, plaintiff was referred by Disability Determination Services to Dr. John dePerczel, an orthopedic surgeon. Dr. dePerczel diagnosed plaintiff as having degenerative disc disease, degenerative arthritis, bilateral lumbaradiculitis, and chronic myofascitis. Dr. dePerczel opined that plaintiff was totally disabled for an indefinite period of time and found no evidence of symptom magnification.
9. Plaintiff's next course of treatment was with Dr. Craig Brigham, an orthopedic surgeon at Miller Orthopedic Clinic. Dr. Bingham saw plaintiff on 11 December 1992 and from a 15-minute IME noted that plaintiff had some scar tissue around the L5-S1 disc, that his pain was likely of disc origin. Dr. Bingham also noted an opinion that plaintiff exhibited inappropriate illness behavior and rated him with a ten (10) percent permanent partial impairment of the spine.
10. Although Dr. Brigham approved the security guard and travel agent jobs as suitable, he admits reluctance towards giving such opinions based only on a fifteen minute exam. Further, from the record it is clear that Dr. Bingham was pressured from a rehabilitation nurse to "put something down" despite the inadequate time for a complete examination.
11. On 8 October 1993, plaintiff underwent a functional capacity evaluation at the Rehability Center. Ms. Beth E. Prasch, a program manager at Rehability Center who did not examine plaintiff and was admittedly not familiar with him, testified that plaintiff could perform certain sedentary work with a ten pound lifting restrictions and implied plaintiff had not exhibited maximum effort and exhibited symptom magnification.
12. On 26 October 1993 plaintiff sought a different opinion from orthopedic surgeon Dr. Gerald Coniglio. At that time, plaintiff was often in severe pain, was unable to bend down, sleep comfortably and unable to walk more than two-hundred (200) yards at a time. Dr. Coniglio diagnosed plaintiff as having herniated disc syndrome of the lumbar spine with pressure at the sciatic nerve and noted no indications of symptom magnification or malingering and was of the Opinion that plaintiff could perform sedentary work.
14. As of the date of his last examination, Dr. Darden opined that plaintiff had reached maximum medical improvement and reaffirmed his earlier rating of (17.5%) percent permanent partial disability to the back. However, Dr. Darden's opinions are based on a two-year-old CAT scan which, he admits, due to its proximity to the March 1991 surgery may contain inaccuracies. Dr. Darden was also of the opinion that plaintiff was capable of sedentary work.
15. Defendant retained Mr. George Page, a self-employed rehabilitation counselor to assist plaintiff in returning to work beginning in November of 1991. Because Dr. Darden would not allow plaintiff to be returned to his former position as a gate attendant for defendant, Mr. Page sought work viewed as within plaintiff's restrictions.
16. Mr. Page located a potential position for plaintiff with Travel Place, as a travel agent and referred him there in late June or early July of 1992. At that time plaintiff's restrictions included a lifting restriction of no more than fifteen (15) pounds and no prolonged sitting or standing. After plaintiff informed co-owner Ms. Katherine Weaver of his concerns about the potential position and his physical restrictions he was not contacted by Travel Place again.
17. When plaintiff was sent to Travel Place by Mr. Page and defendant there in reality was no position available for him there. There was some arrangement between Mr. Page and Ms. Weaver with Travel Place promising to "work something in" for plaintiff.
18. Thereafter, plaintiff was sent by defendant to a series of rehabilitation personnel. One of those, Ms. Anne Welch, referred plaintiff to Budd's Services for a potential position as a security guard in October of 1993. When plaintiff met with Ms. Cheryl Murphy of Budd's Services who offered him a job he again expressed concern over his physical limitations and the demands of the position. Although she had offered the job, at that time Ms. Murphy was unaware that plaintiff was on Social Security Disability, that he was restricted to light duty or sedentary work or the extent of his physical capabilities.
19. Mr. William Haney a rehabilitation counselor, noted that the potential travel agent job was full of uncertainty. There was a lack of funding for training, no provision for remuneration for necessary travel and no time table for when plaintiff might have entered this position which had not yet opened or been created. Further, some of the required activity, such as the lifting of a twenty to thirty (20-30) pound travel book, were not within plaintiff's restrictions.
20. In the opinion of Mr. Haney, the efforts of Ms. Welch were primarily towards attempting to get plaintiff not to comply and to document this in her records. Overall, Mr. Haney believed plaintiff had not received proper vocational rehabilitation.
21. The Full Commission finds that plaintiff was justified in refusing to accept the security guard position for Budd's Services as it was unsuitable given his physical condition and limitations. Further, the Industrial Commission Form 24 Application to Stop Payment should not have been and was improperly approved on 29 November 1993.
22. Temporary total disability benefits were last paid to plaintiff on 4 December 1993 following the approval of the Form 24. Throughout, plaintiff has been cooperative with rehabilitation personnel and has made reasonable efforts in pursuit of employment opportunities. Since 4 December 1993, defendant has made no effort to find plaintiff suitable employment and plaintiff has found no other employment.
23. As a result of his compensable injury by accident to his back, plaintiff has been unable to earn any wages in any employment since 4 December 1993, the date he was last paid compensation by defendant and continuing.
24. As the result of his 4 July 1989 injury by accident plaintiff sustained a fourteen (14%) permanent partial impairment to his back.
* * * * * * * * * * * *
Based on the foregoing findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. "If an injured employee refuses employment procured for him suitable to his capacity he shall not be entitled to any compensation at any time during the of such a refusal, unless (emphasis added) in the opinion of the Industrial Commission such refusal was justified." G.S. § 97-32. In this case plaintiff, as the result of his injury by accident on 4 July 1989, justifiably refused employment unsuitable to his capacity. Id. The Form 24 Application to Stop Compensation was improperly approved on 29 November 1993.
2. As the result of his 4 July 1989 injury by accident to his back, plaintiff is capable of some work but after reasonable efforts has been unsuccessful in locating suitable employment. Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993). Plaintiff is therefore entitled to be paid by defendant temporary total disability compensation at the rate of $376.00 per week form 4 December 1993 and continuing until such time as he obtains suitable employment or the Industrial Commission orders otherwise, subject to the attorney's fee hereinafter approved. G.S. § 97-29.
3. As the result of his 4 July 1989 injury by accident plaintiff is entitled to have defendant pay for all reasonable medical expenses incurred or to be incurred. G.S. § 97-25.
* * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay to plaintiff temporary total disability compensation at the rate of $376.00 per week from 4 December 1993 and continuing until such time as plaintiff obtains suitable employment or defendant obtains permission from the Industrial Commission to terminate payments of compensation and subject to the attorney's fees hereinafter approved. That amount of said compensation that has accrued shall be paid to plaintiff in one lump sum.
2. Defendant shall pay all reasonable medical expenses incurred or to be incurred by plaintiff as the result of his 4 July 1989 injury by accident.
3. A reasonable attorney's fee in the amount of twenty-five (25) percent of the compensation herein awarded is hereby approved for Clair G. Campbell, plaintiff's former counsel, and his counsel William Goldfarb.
4. Defendant shall pay the costs, including the following expert witness fees:
(a) $240.00 to Dr. Frederick Finger, III
(b) $215.00 to Dr. Craig Brigham
(c) $215.00 to Dr. Gerald Coniglio
(d) $90.00 to Beth E. Prasch
(e) $70.00 to Anne Welch
(f) $75.00 to William Haney
(g) $90.00 to George Page.
* * * * * * * * * * * *
ORDER
Commission to continue to cooperate fully with reasonable rehabilitation efforts by defendant.
 S/ ________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________ COY M. VANCE COMMISSIONER
S/ _______________________ WILLIAM L. HAIGH CHIEF DEPUTY COMMISSIONER